**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEXANDER MERCADO individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LASKO PRODUCTS, LLC and THE HOME DEPOT, INC.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Alexander Mercado ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendants Lasko Products, LLC and The Home Depot, Inc. ("Defendants"). Plaintiff makes the following allegations pursuant to the investigations of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiff brings this class action lawsuit on behalf of themselves and all others similarly situated who either: (1) purchased Lasko electric space heaters without thermostats ("the Lasko Products")[1] in the state of New York; (2) purchased an electric space heater without a thermostat at Home Depot in the state of New York ("the Home Depot Products")[2]; or (3)

[1] The Lasko Products include, but are not limited to, the 9" Oscillating Personal Desktop Ceramic Space Heater with Tip-Over Switch (Model # CD09475), the Lasko 200W MyHeat Personal Desk/Tabletop Space Heater with Simple Controls, (Model # 100, 101, 102, 103), and the Ceramic Fireplace Space Heater, CA20100 (Model # CA20100).

[2] The Home Depot Products include, but are not limited to, the Handy Heater 1500-Watt 18.5 in. Electric Ceramic Parabolic Space Heater with Tip-Over Safety (Model # HEATPN-MC1, the living zone 500-Watt 7 in. Electric Personal Ceramic Space Heater (Model # BNT-5A), the Comfort Zone 1,500-Watt Electric Infrared Ceiling Mount Quartz Portable Heater (Model # CZQTV5M), the AIWA 6.7 in. 500-Watt Mini Portable Ceramic Space Indoor Electric Heater Convection Overheat Protection Tip-Over Auto-Shutoff (Model # WSH3-1012-GRY, WSH3-1012-WHT), the Dr Infrared Heater 1500W Black Electric Infrared Tower Radiant Infrared Space Heater (Freestanding/Mountable) (Model # DR-298), the VH202 750-Watts Black Indoor

purchased a Lasko electric space heater without a thermostat at Home Depot in the state of New York ("the Lasko Home Depot Products").[3]

2. Defendants market the Lasko Products, the Home Depot Products, and the Lasko Home Depot products to consumers as safe and lawful products that are suitable for heating indoor or outdoor spaces.

3. However, New York State has outlawed the sale of electric space heaters without thermostats because such products pose a serious, often fatal fire hazard. *See* New York Gen. Bus. Law §391-jj. The United States Consumer Product Safety Commission "estimates that portable heaters, including electric space heaters, are involved in an average of 1,600 fires per year, resulting in an average of 70 deaths and 160 injuries annually from 2019 to 2021."[4]

4. According to the National Fire Protection Association, "[h]eating equipment is one of the leading causes of home fire deaths. Fire departments responded to an estimated average of 37,365 fires involving heating equipment per year from 2020-2024, accounting for 11% of all reported home fires during this time, and these fires resulted in estimated annual 417 civilian deaths, 1,260 civilian injuries, and $1.2 billion in property damages."[5]

---

Electric Space Heater with Compact Size for Small Spaces (Model # EH1-0227-06), and the Heat Storm Tradesman 1500-Watt Electric Indoor/Outdoor Quartz Infrared Portable Space Heater w/Tripod Wall and Ceiling Mount (Model # HS-1500-TRIB).

[3] The Lasko Home Depot Products include, but are not limited to, Lasko's My Heat 400 W 6.2 in. Electric Mini Compact Personal Ceramic Space Heater with Overheat Protection, Auto Shut-Off (Model #200 and #201), the 1500-Watt 7.65 in. Electric Bathroom Ceramic Space Heater with Fan and ALCI Safety Plug (Model # CD08200, CD08210, CD08500), and the 1500 W 20" Black Electric Indoor Tower Ceramic Fireplace Space Heater, 3D Flame Effect, Tip-Over Switch and Timer (Model # CA20150).

[4] *There's a Chill in the Air – Stay Warm Safely – Be Cautious When Using Generators, Furnaces and Space Heaters*, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Newsroom/News-Releases/2025/Theres-a-Chill-in-the-Air-Stay-Warm-Safely-Be-Cautious-When-Using-Generators-Furnaces-and-Space-Heaters (Jan. 22, 2025).

[5] *Home Heating Safety*, NATIONAL FIRE PROTECTION ASSOCIATION, https://www.nfpa.org/education-and-research/home-fire-safety/heating (last accessed Feb. 2026).

5. The danger posed by electric space heaters is what prompted the New York State Legislature to regulate their design and sale in the first place. The Safe Space Heaters Act, signed into law in 2022, was in part passed in response to a deadly fire in the Twin Parks apartment building in the Tremont section of the Bronx.[6] The fire killed 17 people, eight of whom were children. It also left more than 40 people injured.[7]

6. The Safe Space Heaters Act, Legislation (S.7863A/A.9181B), "amends the general business law to prohibit any retailer of electric space heaters from selling them in New York State without a thermostat, automatic shut off, and certification by a testing and certification body recognized and approved the United States Department of Labor, Occupational Safety and Health Administration."[8] *See* New York Gen. Bus. Law §391-jj.

7. Defendants' advertising and marketing tells consumers the Lasko Products, the Home Depot Products, and the Lasko Home Depot Products are lawful for purchase or sale in New York. However, in direct contravention of the Safe Space Heaters Act, the three types of Products are actually unlawful in the state of New York.

8. Defendants' marketing implies that their Products are safe to buy, use and install in New York for the heating of indoor and outdoor spaces. Yet Defendants do not disclose to consumers that the products have been deemed unfit for use and/or unsafe in New York.

---

[6] *Governor Hochul Signs Legislation to Improve Safety Standards for Electric Space Heaters*, NEW YORK STATE, https://www.governor.ny.gov/news/governor-hochul-signs-legislation-improve-safety-standards-electric-space-heaters (Dec. 8, 2022).

[7] *Memorial services mark 4 years since deadly high-rise apartment building fire in the Bronx*, EYEWITNESS NEWS, https://abc7ny.com/post/bronx-apartment-building-fire-memorial-services-mark-4-years-twin-parks-north-west-deadly-blaze/18379460/ (Jan. 9, 2026).

[8] *Governor Hochul Signs Legislation to Improve Safety Standards for Electric Space Heaters*, NEW YORK STATE, https://www.governor.ny.gov/news/governor-hochul-signs-legislation-improve-safety-standards-electric-space-heaters (Dec. 8, 2022).

9. As a result of the express and implied misleading messages conveyed by their marketing, Defendants have caused Plaintiff and Class Members to purchase a product that is unlawful. Plaintiff and other similarly situated consumers have been harmed in the amount they paid, or overpaid, for the non-thermostat electric space heaters.

10. Further underscoring the harm of Defendants' misleading representations to unsuspecting consumers is the clear danger posed by certain types of electric space heaters that have caused fatal fires in the past. Tenants and homebuyers who wish to heat their homes depend on truthful labeling claims to make safe, informed choices that preserve their safety. Defendants' decision to instead prey on them for profit while knowingly ignoring the well-documented threat posed by certain types of electric space heaters is unconscionable and is in contravention of New York law and policy.

11. Plaintiff brings claims against Defendants individually and on behalf of a class of all others similarly situated for (i) violation of New York Gen. Bus. Law § 349; and (ii) violation of New York Gen. Bus. Law §391-jj.

## THE PARTIES

### I. PLAINTIFF ALEXANDER MERCADO

12. Plaintiff Alexander Mercado is a citizen of New York who resides in Bronx, New York. In January 2026, Plaintiff Mercado purchased one of the Lasko Home Depot Products, the 1500-Watt 7.65 in. Electric Bathroom Ceramic Space Heater with Fan and ALCI Safety Plug, from a Home Depot store located at 600 Exterior St, Bronx, NY 10451.

13. Prior to his purchase, Plaintiff Mercado reviewed the images of the packaging and labeling, as well as Defendants' marketing of the Lasko Home Depot Products, which represented the Products as an electric space heater that was lawful and safe for use. Nowhere on Defendants'

packaging and in Defendants' marketing did Defendants disclose that that the Lasko Home Depot Products were unsafe or unlawful to sell in New York.

14. Thus, Defendants represented to Plaintiff Mercado, and Plaintiff Mercado understood, that the Lasko Home Depot Product was safe and legal to use in New York.

15. Defendants' misrepresentations and omissions were material to Plaintiff Mercado in that he would not have purchased the Lasko Home Depot Product had Defendants divulged that the Lasko Home Depot Product he purchased was banned in New York or deemed unsafe under New York law. Thus, Plaintiff Mercado was injured by the price premium he paid for the Lasko Home Depot Product as a result of Defendants' misrepresentations and omissions.

## II. DEFENDANTS

16. Defendant Lasko Products, LLC is a Pennsylvania Limited Liability Company with its principal place of business in West Chester, Pennsylvania. Defendant Lasko Products, LLC manufactures, markets, sells, and distributes the Lasko Products throughout the contiguous United States, including in New York. Defendant Lasko Products, LLC manufactured, marketed, and sold the Lasko Products at issue at all times during the relevant class period.

17. Defendant The Home Depot, Inc., is a Delaware corporation with its principal place of business in Atlanta, Georgia. Defendant The Home Depot, Inc. sells and distributes the Home Depot Products and the Lasko Home Depot Products throughout the contiguous United States, including in New York. Defendant The Home Depot, Inc. marketed and sold the Home Depot Products and the Lasko Home Depot Products at issue at all times during the relevant class period.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because there are more than 100 Class Members, the aggregate claims of all members of the

proposed Class exceed $5,000,000.00, exclusive of interest and costs, and at least one Class Member is a citizen of a state different from at least one Defendant.

19. This Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves of the benefits of doing business in this District by marketing and selling the Products to consumers in New York, such that Defendants derived substantial revenue from its sales of the Products to New York consumers.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events, omissions, and acts giving rise to the claims herein occurred in this District, and because Defendants transact business and/or have agents within this District.

## FACTUAL ALLEGATIONS

### I. THE POPULARITY OF—AND KNOWN DANGERS POSED BY—ELECTRIC SPACE HEATERS

21. Electric space heaters have been in use since the 1890s.[9]

22. Electric space heaters are a popular choice for heating small and medium-sized spaces. They are "typically used when the main heating system is unavailable, inadequate, or when central heating is too costly to install or operate."[10]

23. "In 2024, electric space heaters were used in over 65% of urban households across North America and Europe […] Over 58 million units of portable electric space heaters were sold globally in 2023, and this number continues to rise."[11]

---

[9] *The History of Electric Heating*, ELECTRICRADIATORSDIRECT, https://www.electricradiatorsdirect.co.uk/news/the-history-of-electric-heating/ (Mar. 16, 2017).

[10] *Small Space Heaters*, U.S. DEPARTMENT OF ENERGY, https://www.energy.gov/energysaver/small-space-heaters (last accessed Mar. 5, 2026).

[11] *Electric Space Heater Market Size, Share, Growth, and Industry Analysis, By Type (Convector Heater, Radiant Heater), By Application (Residential, Commercial), Regional Insights and Forecast to 2033*, Market Reports World, https://www.marketreportsworld.com/market-reports/electric-space-heater-market-

24. There are four main types of modern electric space heaters available: convection space heaters, radiant space heaters, micathermic panel space heaters, and ceramic space heaters.[12]

25. Convection space heaters utilize "convection to transfer heat via the movement of liquid or gas." A convection heater "works much like a convection oven and differs from radiant or conduction heating, as it relies on the movement of air."[13]

26. A radiant space heater generates heat using radiation, and a micathermic heater "uses mica panels, which are composed of a naturally occurring mineral [...] these panels are heated by electricity and emit both radiant and convective heat."[14]

27. A ceramic heater "uses ceramic plates and internal resistive elements to generate and radiate heat […] To ensure the warmth reaches the entire room, most ceramic heaters feature a built-in fan that blows air over the hot plates, circulating heated air evenly."[15]

28. All electric space heaters, regardless of type, pose fire and safety risks.

---

14719053#:~:text=In%202024%2C%20electric%20space%20heaters,automatic%20shutoff%20and%20eco%2Dmode. (last updated Feb. 9, 2026).

[12] *Space Heaters: Everything You Need to Know*, Nortex Sales and Sevice, https://nortexss.com/blogs/val6-radiant-heaters/space-heaters-everything-you-need-to-know?srsltid=AfmBOoquZMUN7NnoEmjq2QsbKuoLRza8q5lHD8cTIzM5PW_i7rIKpWy0 (Jan. 12, 2022).

[13] *What Is a Convection Heater and How Does It Work?*, AIRE SERV, https://www.aireserv.com/about/blog/what-is-a-convection-heater-/ (Feb. 2, 2026).

[14] *How Does Mica Heating Compare to Infrared Heating?*, DURONIC, https://duronic.com/blogs/duronic-blog/how-does-mica-heating-compare-to-infrared-heating?srsltid=AfmBOoqXOTg5KA4nZ3CkNbbdlL8iVVGKDxcOKBylKRhQ9-ytxvjRw4j7 (last accessed Mar. 6, 2026).

[15] *A Guide to Ceramic Heater and Safety*, CIARRA GADGETS, https://ciarragadgets.com/blogs/news-1/ceramic-heater?srsltid=AfmBOoovLovZVrFtP7ZnRjo-3WfpcnyXjBOyVLHBg56BHtcQQXRROt2p (Jul. 9, 2025).

29. The danger is multifold. First, electric space heaters must only be used when all electrical components (the heater, power cord, receptacle, and electrical wiring) are in good working condition, as a defect in any one of the components can lead to a fire.[16]

30. Second, electric space heaters should never be used with under-rated extension cords. Using an underrated cord can cause the cord's insulation materials to overheat, leading to burns, shocks or a short circuit that results in a fire.[17]

31. Third, "[a]nother common fire hazard associated with portable electric heaters is their proximity to common combustibles. Most portable heaters warn consumers to maintain a minimum of three feet of clearance from all combustibles. Many newer space heaters have safety features that will eliminate the heat or shut the appliance off if the space heater overheats or falls. Most, however, can't detect if the objects around them are overheating or are in danger of ignition."[18]

32. Partly as a result of the risks posed by electric space heaters, the use of heating equipment "is a leading cause of fires in US homes." Between 2016 and 2020, municipal fire departments in the US "responded to an estimated annual average of 44,210 home structure fires caused by heating equipment."[19] Approximately 14,000 of those fires were a result of fixed or portable space heaters, with a death toll of over 400 casualties.[20]

---

[16] *Common Causes of Electric Space Heater Fires & Methods of Prevention,* JS Held, https://www.jsheld.com/insights/articles/common-causes-of-electric-space-heater-fires-methods-of-prevention (last accessed Mar. 6, 2026).

[17] *Id*.

[18] *Id*.

[19] *Home Heating Fires*, NATIONAL FIRE PROTECTION ASSOCIATION, https://www.nfpa.org/education-and-research/research/nfpa-research/fire-statistical-reports/heating-equipment (Dec. 1, 2022).

[20] Richard Campbell, *Home Heating Fires, Supporting Tables*, National Fire Protection Association (Dec. 2022).

33. Space heaters are often responsible "for the largest shares of losses in home heating equipment fires, accounting for nearly a third (30%) of the fires, but over seven out of ten deaths (73%) and seven out of ten (70%) of the injuries in home fires caused by heating equipment."[21]

34. Electric space heaters are, by the numbers, the deadliest home heating devices. The next most deadly fire hazard—fireplaces or chimneys—resulted in 30 civilian deaths between 2016-2020.[22] This means electric space heaters are 13 times more deadly than the next leading cause of fire-related deaths.

35. Perhaps due to the outsized risk they pose, electric space heaters have often been recalled to the tune of tens—or hundreds—of thousands of units.

36. For example, in 2014, Vornado recalled over 70,000 units of its VH110 Whole Room Vortex heater. The heater was known to "overheat and cause the units to melt, catch fire and ignite nearby items, posing a fire and burn hazard to consumers."[23]

37. Duraflame, too, recalled over 30,000 electric fireplace units in 2014 due to the same risks at issue in the Vornado recall.

38. More recently, in 2024, the Govee brand (also known as GoveeLife) recalled and refunded more than half a million electric space heater units because "[t]esting determined the smart electric space heaters do not comply with the voluntary industry safety standard, UL 1278, posing an overheating and fire risk from wireless control features."[24]

---

[21] *Home Heating Safety*, NATIONAL FIRE PROTECTION ASSOCIATION, https://www.nfpa.org/education-and-research/home-fire-safety/heating (last accessed Feb. 2026).

[22] Richard Campbell, *Home Heating Fires, Supporting Tables*, National Fire Protection Association (Dec. 2022).

[23] *Vornado Air Recalls Electric Space Heaters*, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2014/Vornado-Air-Recalls-Electric-Space-Heaters (last accessed Mar. 2026).

[24] *GoveeLife and Govee Smart Electric Space Heaters Recalled Due to Fire and Burn Hazards; Imported by Govee*, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION,

39. In other words, there are dedicated protocols for dealing with electric space heaters that pose extraordinary risks.

## II. THE SAFE SPACE HEATERS ACT

40. Governor Kathy Hochul signed the Safe Space Heaters Act into law on December 8, 2022.

41. One of the sponsors of the bill, State Senator Cordell Cleare, said the legislation was "specifically designed to prevent fires, save lives and make residences safer during heating season. New Yorkers deserve the highest safety standards in the nation and today we take action to meaningfully remember those we have lost in the past and resolve to end preventable fires now and forevermore."[25]

42. Passage of the Safe Space Heaters Act was motivated by a fatal fire in the 19-story Twin Parks apartment complex in the Bronx.

43. The Twin Parks fire, which occurred in 2021 as the result of a faulty space heater, was one of the "deadliest New York fire[s] in over 30 years."[26] The Twin Parks fire killed 17 people, eight of whom were children, and injured more than 40 others.

44. In an effort to make electric space heaters safer and to introduce fail-safes, the Safe Space Heaters Act requires each electric space heater to: "include[] a thermostat; include[] an automatic shut-off; and [be] certified by a testing and certification body recognized and approved by the United States department of labor, occupational safety and health administration."[27]

---

https://www.cpsc.gov/Recalls/2025/GoveeLife-and-Govee-Smart-Electric-Space-Heaters-Recalled-Due-to-Fire-and-Burn-Hazards-Imported-by-Govee (last accessed Mar. 2026).

[25] *Governor Hochul Signs Legislation to Improve Safety Standards for Electric Space Heaters*, NEW YORK STATE, https://www.governor.ny.gov/news/governor-hochul-signs-legislation-improve-safety-standards-electric-space-heaters (Dec. 8, 2022).

[26] *Id.*

[27] New York Gen. Bus. Law §391-jj.

45. Only if an electric space heater meets all three requirements is it permitted to be assembled, manufactured, sold or distributed in the state of New York.

## III. DEFENDANTS, WHO MARKET THE PRODUCTS AS SAFE, LAWFUL, AND APPROPRIATE FOR USE IN NEW YORK WHILE OMITTING THE FACT THAT THEY ARE UNSAFE AND CANNOT BE SOLD THERE, CHARGE A PRICE PREMIUM BASED ON THOSE REPRESENTATIONS AND OMISSIONS

46. Defendants capitalized on the affordability of electric space heaters versus traditional utility costs, and created and/or sold the Lasko Products, the Home Depot Products, and the Lasko Home Depot Products to provide a purported premium, safe, and energy-efficient heating alternative for consumers. Defendants' claims that the Products are a safe alternative to traditional heating systems allow them to charge consumers a price premium for their Products.

47. Defendants assemble, manufacture, distribute or the sell the electric space heaters through websites such as https://www.homedepot.com/, in brick-and-mortar stores such as Walmart, and other online sites, such as Amazon.com.

48. Defendants' Lasko Products, the Home Depot Products, and the Lasko Home Depot Products are all substantially similar in that they:

(i) are all manufactured and assembled and/or distributed and sold by Defendants;

(ii) are all lacking an adjustable thermostat;

(iii) are all sold in the state of New York; and

(iv) are all marketed to mislead and induce consumers to overpay a premium, or otherwise purchase a Product, which claims to be safe and lawful for use in New York State, even though they are not—and these misleading statements led consumers to buy something that they otherwise would not have purchased.

49. The Products are advertised as being "safe" for use, including for use in New York State.

50. For example, the "My Heat 400 W 6.2 in. White Electric Mini Compact Personal Ceramic Space Heater with Overheat Protection, Auto Shut-Off" is advertised on Home Depot and Lasko's websites as "a safe ceramic element, allowing worry-free use for extended periods."[28]

51. As another example, the 1500-Watt 18.5 in. Electric Ceramic Parabolic Space Heater with Tip-Over Safety as advertised on Home Depot's website emphasizes that "[t]he safety features include auto-off tip over protection and cool-touch housing."[29]

52. As another example, the 9" Oscillating Personal Desktop Ceramic Space Heater with Tip-Over Switch is advertised on lasko.com as being "[d]esigned with safety in mind, this quiet space heater features a tip-over switch, 2x overheat protection, and cool-touch housing—perfect for families, dorms, and office spaces."

[28] https://www.homedepot.com/p/Lasko-My-Heat-400-W-6-2-in-White-Electric-Mini-Compact-Personal-Ceramic-Space-Heater-with-Overheat-Protection-Auto-Shut-Off-201/331884325#see-more-details; https://lasko.com/products/lasko-myheat-mini-personal-ceramic-heater-white.

[29] https://www.homedepot.com/p/1500-Watt-18-5-in-Electric-Ceramic-Parabolic-Space-Heater-with-Tip-Over-Safety-HEATPN-MC1/329885186#see-more-details

53. Many of these products, which are sold or distributed in New York, have no adjustable thermostat.




Figure 1

//

//

//

//

//

//

//

homedepot.com/p/Lasko-My-Heat-400-W-6-2-in-White-Electric-Mini-Compact-Personal-Ceramic-Space-Heater-with-Overheat-Protect

Yonkers 10PM 10710 What can we help you find today?

| | |
|---|---|
| Color | White |
| Color Family | Blue |
| Control Type | Mechanical |
| Fan Mode | No Fan Mode |
| Features | Cool-to-the-Touch |
| Heat rating (BTU/hour) | 1365 Btu/h |
| Heater Type | Ceramic |
| Heating Method | Convection |
| Hub Required | No hub connection available |
| Indoor/Outdoor | Indoor |
| Location Use | Desk |
| Number of Heat Settings | 1 |
| Portable Heater Features | Portable, Quiet Operation |
| Power Options | Plug-in |
| Power/Fuel Type | Electric |
| Remote Access | No Remote Access |
| Returnable | 90-Day |
| Room Size | Small |
| Thermostat Settings | Not Adjustable |

Figure 2

https://www.homedepot.com/p/Lasko-1500-Watt-7-65-in-Electric-Bathroom-Ceramic-Space-Heater-with-Fan-and-ALCI-Safety-Plug-CD08210/315844112

Home Depot Credit C

Mount Ple... 10PM 10532 What can we help you find today? Shop All Services DIY Log In C




Lasko

**1500-Watt 7.65 in. Electric Bathroom Ceramic Space Heater with Fan and ALCI Safety Plug**

(400) Questions & Answers (37)

$41 34

Pay **$16.34** after **$25 OFF** your total qualifying purchase upon opening a new card.

Apply for a Home Depot Consumer Card

- Equipped with an ALCI safety plug especially for bathroom use
- Simple button with two heat settings, 1-hour timer, plus fan only
- Fully assembled space heater with built-in safety features
- View More Details

Pickup at Mount Pleasant

Delivering to 10532

Ship to Store Delivery

Figure 3

54. Each Lasko Product, Home Depot Product, and Lasko Home Depot Product contain similar, if not identical, claims about safety. More saliently, none of the Lasko Products, Home Depot Products, or Lasko Home Depot Products contain a warning that they are unlawful or unsafe for use under New York State law.

55. In short, Defendants have positioned their Products as safe for use, despite the fact that they contravene New York State's specific regulations concerning electric space heaters. And Defendants nevertheless charge a price premium to NY-based consumers based on their representations and omissions positioning their Products as safe and lawful for use.

56. As discussed below, Defendants' positioning of its Products is false because, despite their claims of safety, the Products are not safe or lawful for use in New York State. Thus, consumers are paying more for the Products than they otherwise would as a result of Defendants' representations and omissions.

## IV. THE LASKO PRODUCTS, HOME DEPOT PRODUCTS, AND LASKO HOME DEPOT PRODUCTS ARE UNSAFE AND UNLAWFUL FOR USE IN NEW YORK

57. In part as a response to the deadly Twin Parks fire, which was started by a faulty electric space heater, Governor Kathy Hochul signed the Safe Space Heaters Act into law.

58. The Safe Space Heaters Act requires that all electric space heaters that are assembled, manufactured, distributed, or sold in the course of business in New York include a thermostat.

59. A thermostat is "a device that keeps a building, engine, etc. within a limited temperature range by automatically switching the supply of heat on and off."[30] Put differently, a

[30] https://dictionary.cambridge.org/us/dictionary/english/thermostat

thermostat reacts to ambient temperature and turns the heat on or off automatically to maintain a set temperature.

60. Any electric space heater assembled, manufactured, distributed, or sold in New York that does not include a thermostat violates New York Gen. Bus. Law §391-jj.

61. Electric space heaters that violate New York Gen. Bus. Law §391-jj cannot be sold in New York because they have been deemed unlawful, as they do not contain the required safety features deemed essential by the Legislature.

## V. PLAINTIFF AND CLASS MEMBERS WERE INJURED BY DEFENDANTS' MISREPRESENTATIONS AND OMISSIONS

62. To summarize the preceding allegations, Defendants have capitalized on the need for cost-efficient heating alternatives by manufacturing and selling the Products, which do not contain the safety features mandated by New York law. Defendants advertise, market and sell the Products as a safe for use in New York when, in fact, they are not. In the alternative, Defendants fail to mention that the Products are unlawful and unfit for use in New York, leading consumers to purchase them unsuspectingly. Defendants charge a price premium based on those representations of safety, or omissions of danger, as well.

63. Defendants, as manufacturers, parties to a contract to manufacture, retailers, sellers or advertisers of the Products, are best situated to set the price of their Products and to know their Products. Defendants knew or should have known that the Products were unsafe and unfit for use in New York State. Nonetheless, Defendants decided to charge a price premium for the Products by concealing and affirmatively misrepresenting the true nature of the Products, as discussed herein.

64. Defendants knew, or should have known, that their claims were false, misleading, deceptive, and unlawful at the time that Defendants manufactured, marketed, advertised, labeled,

and sold the Products to Plaintiff and the Class. Defendants intentionally and deliberately used their representations and omissions to cause Plaintiff and similarly situated consumers to purchase the Products and pay a price premium for them. Defendants, as the manufacturers, had exclusive control over how the Products were assembled, built, manufactured, marketed, labeled, and priced, and Defendants readily and easily could have remedied the deception by: (1) not positioning the Products as a product safe for use in New York; (2) disclosing the dangers of electric space heaters without thermostats; and (3) by not charging a premium for their Products. Instead, Defendants deliberately chose to market the Products as a safe and cost-effective alternative for individuals seeking to heat their homes/offices, thereby misleading and inducing consumers into buying and overpaying for the Products. Thus, Defendants knew, or should have known, at all relevant times, that their representations and omissions misled reasonable consumers, such as Plaintiff, into buying the Products and paying more than they otherwise would have, to attain the product attributes that Defendants falsely advertised and warranted.

65. Defendants' representations and omissions are material to reasonable consumers, including Plaintiff, because consumers, especially those who are looking for low-cost heating options, seek alternatives to whole home heating systems that still allow them to keep their homes safe from fires and other hazards. Consequently, Defendants' representations and omissions have the potential to influence consumers' decision to not only purchase the Products, but also to pay a price premium for them, including Plaintiff, as set forth herein. Indeed, Plaintiff did rely on Defendants' representations and omissions that the Products were safe for use in his living space.

66. Plaintiff and Class Members were injured by Defendants' practices in that, had Defendants not falsely positioned their Products as a safe and lawful alternative to traditional heat

sources, Plaintiff would not have paid as much for the Products as they did, or not purchased the Products at all.

67. Likewise, Plaintiff and Class Members were injured by Defendants' practices in that, had Defendants disclosed that its electric space heaters lacked the requisite thermostat and had Defendants disclosed that the Products were unsafe for use in New York, Plaintiff and Class Members would not have paid as much for the Products as they did, or not purchased the Products at all.

68. Accordingly, Plaintiff and Class Members were injured by the price premium they paid for the Products as a result of Defendants' misrepresentation and material omissions.

## CLASS ALLEGATIONS

69. Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Plaintiff seeks to represent a class defined as all persons who, during the applicable statute of limitations period, purchased in the state of New York any of Defendants' Lasko Products, Home Depot Products, and/or Lasko Home Depot Products for personal, family, or household purposes (the "Class").

70. Excluded from the Class are: (1) persons who made such purchases for the purpose of resale; (2) any Judge or Magistrate presiding over this action and any members of their families; (3) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; and (4) Plaintiff's counsel and Defense counsel.

71. ***Numerosity.*** At this time, Plaintiff does not know the exact number of members of the aforementioned Class. However, given the size of Defendants' business, Plaintiff believes that Class Members are so numerous that joinder of all members is impracticable.

72. There is a well-defined community of interest in the questions of law and facts involved in this case. Questions of law and fact common to members of the Class that predominate over questions that may affect individual Class Members include:

(i) Whether the lack of a thermostat in the Products renders them unfit, unsafe or unlawful for use in New York State;

(ii) Whether Defendants misrepresented and/or failed to disclose material facts concerning the Products; and

(iii) Whether Plaintiff and the Class sustained damages, and if so, the proper measure of those damages.

73. ***Typicality.*** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like other members of the Class, purchased the Products relying on the representations and omissions made by Defendants and were exposed to the same packaging and labeling as all other Class Members, and paid a price premium because of Defendants' misrepresentations and omissions.

74. ***Adequate Representation.*** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of the Class Members will be fairly and adequately protected by Plaintiff and his counsel.

75. ***Superiority.*** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the members of the Class. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also

presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of liability issues.

## CAUSES OF ACTION

### COUNT I
### Violation Of New York General Business Law § 349

76. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

77. Plaintiff brings this claim on behalf of himself and the Class against Defendants.

78. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in" New York. "To establish a prima facie case under GBL § 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) (cleaned up).

79. Defendants positioned and represented the Products to Plaintiff and Class Members—who are consumers—as electric space heaters that were safe and fit for use in New York. However, those representations were not true in that the lack of a thermostat, as prescribed by New York law, renders the Products harmful and unsafe for use.

80. Defendants did not disclose on the Products' packaging, labeling, or anywhere else to Plaintiff and Class Members that the lack of a thermostat renders the Products unsafe or unfit for use in New York.

81. Defendants' misrepresentations and omissions were material in that Plaintiff and Class Members would not have paid as much for the Products as they did but for Defendants' failure to disclose that the Products were unlawful in New York, and/or Defendants' misrepresentations concerning the alleged safety of the Products. The representations and omissions here were particularly material because Defendants position their Products as safe heating alternatives to whole home heating systems, notwithstanding this materiality is present across all Class Members.

82. As a direct and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Plaintiff and Class Members were injured in that they would not have paid as much for the Products as they did, or purchased them at all, but for Defendants' failure to disclose that the Products were unlawful in New York, and/or Defendants' misrepresentations concerning the alleged safety of the Products.

83. On behalf of themselves and the Class, Plaintiff seeks to recover his actual damages (in an amount to be determined at trial) or fifty (50) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees. GBL § 349(h).

**<u>COUNT II</u>**
**Violation Of New York General Business Law § 391-jj**

84. Plaintiff hereby incorporates the foregoing allegations as if fully stated herein.

85. Plaintiff brings this claim on behalf of himself and the Class against Defendants.

86. GBL § 391-jj states:

> "No person, firm, partnership, association or corporation regularly engaged in the business of assembling, manufacturing, distributing or the retail sale of electric space heaters shall assemble, manufacture, distribute, sell or offer to sell any electric space heater in the normal course of business in this state unless such electric space heater: 1. includes a thermostat; 2. includes an automatic shut-off; and 3. has been certified by a testing and certification body

> recognized and approved by the United States department of labor, occupational safety and health administration.

87. GBL § 391-jj states that any corporation or business that assembles, manufactures, distributes or sells electric space heaters in the normal course of business in New York can only do so if those electric space heaters have a thermostat.

88. Each of Defendants' Lasko Products, Home Depot Products, and Lasko Home Depot Products are sold without the requisite thermostat to consumers in the normal course of business in New York.

89. Defendants distributed, or participated in the retail sale, of the Products even though they did not incorporate a thermostat, as required under New York law.

90. Plaintiff and the members of the Class are consumers who purchased Defendants' Products in New York.

91. The sale of the Products violates GBL § 391-jj.

92. As a direct and proximate result of Defendants' sale or distribution of the unlawful Products, Plaintiff and Class Members were injured in that they either: (1) would not have paid as much for the unlawful Products as they did; or (2) would not have purchased them at all.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants as follows:

(i) For an order certifying the Class under Fed. R. Civ. P. 23, naming Plaintiff as representatives of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(ii) For an order declaring that the Defendants' conduct violates the statutes referenced herein;

(iii) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(iv) For compensatory, statutory, and punitive damages in the amounts to be determined by the Court and/or jury;

(v) For prejudgment interest on all amounts awarded; and

(vi) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all claims so triable.

Dated: March 24, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *<u>/s/ Philip L. Fraietta</u>*
Philip L. Fraietta

Philip L. Fraietta
Matthew A. Girardi
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com
mgirardi@bursor.com

*Attorneys for Plaintiff*